UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 6: 09-16-S-DCR |
| ) | |
| V. ) | |
| ) | |
| WILLIAM B. MORRIS, et al., ) | **MEMORANDUM OPINION** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*

Defendant William B. Morris sought to present opinion testimony at trial of John N. Craft, C.P.A., regarding the net profits of Morris' company, B & J Transfer, Inc., derived from contracts with Clay County and the City of Manchester. The United States moved to exclude Mr. Craft's testimony on this issue. [*See* Record No. 801] The Court has previously sustained the government's motion. This Memorandum Opinion will further explain the Court's ruling.

**I.   Introduction**

Prior to trial, Defendants William B. Morris and Debra L. Morris disclosed their intent to call C.P.A. John Craft to express opinions concerning, *inter alia*, the net profits realized by B & J Transfer from its contracts with Clay County and the City of Manchester. [*See* Record No. 731] Defendant Stanley Bowling also filed a pretrial notice of intent to introduce

opinion testimony. [Record No. 727] Bowling stated that his proposed expert, C.P.A. Charles Stivers,

> will testify that the forfeiture sought by the United States represents gross revenues from the subject contracts [with the City of Manchester], and that a gross revenue figure does not represent the amount that B & B Excavating, Inc., and/or Stanley Bowling realized from the contracts; and that legitimate operating expenses, such as fuel and auto[] insurance, professional services, materials, office expense[s] and payroll are actually incurred and properly deductible.

[*Id.*] As indicated by Bowling's disclosure and statements of counsel during oral argument on the United States' motion to exclude, Bowling and the Morrises seek to introduce this opinion testimony to establish what they believe is the appropriate measure of assets to be forfeited to the United States in the event they are convicted under Count Two of the Superseding Indictment. It is noteworthy that the Defendants *do not contest* that they have received profits from their respective contracts. It is admitted that they have done so. Instead, they seek to contest the *amount* of profits received.

In Count Thirteen of the Superseding Indictment, the United States seeks forfeiture of money and other assets pursuant to 18 U.S.C. § 982 upon conviction of the violation of 18 U.S.C. § 1956 as alleged in Count Two. [*See* Record No. 272, p. 23] The assets sought under Count Thirteen are described as "including, but not limited to: . . . $1,513,512.36[,] which constitutes the sum involved in the violation of 18 U.S.C. § 1956(h)." [*Id.*] The United States also seeks forfeiture under RICO based on the offense alleged in Count One of the Superseding Indictment. [*See id.*, p. 21-22] However, the parties have raised the issue

of proceeds only with respect to money laundering under § 1956.  Thus, the Court will limit its analysis to that statute.

## II.     "Proceeds" under the Money-Laundering Statute, 18 U.S.C. § 1956

In Count Two of the Superseding Indictment, the defendants are alleged to have conspired to engage in money-laundering in violation of 18 U.S.C. § 1956(h). [Record No. 272]  Section 1956 provides, in pertinent part:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity —
>
> > (A)(I)  with the intent to promote the carrying on of specified unlawful activity; or
> > . . .
> >
> > (B)    knowing that the transaction is designed in whole or in part —
> >
> > > (I)    to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity
> > . . .
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(A)(I), (B)(I).  The statute further provides that "[a]ny person who conspires to commit any offense defined in [§ 1956] . . . shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."  18 U.S.C. § 1956(h).

The United States has presented evidence at trial that Defendants Bowling and Morris helped buy votes for certain candidates and that as a result of this assistance, their respective companies, B & B Excavating and B & J Transfer, were awarded contracts with Clay County and the City of Manchester. Under the government's theory, the violation of § 1956 was payment under those contracts, because the contracts and the money the defendants received under them constituted proceeds of unlawful activity — they were derived, indirectly, from bribery (*i.e.*, paying voters to vote for certain candidates) and extortion (*i.e.*, demanding that candidates "pay to play").[1] In other words, the United States alleges that Bowling and Morris received, through their companies' contracts with the city and county, money that had been used to ensure the election of certain candidates through unlawful means.

On May 20, 2009, Congress amended § 1956 by defining the term "proceeds," which had previously been left undefined in the statute. *See* 18 U.S.C. § 1956(c)(9). Following the 2009 amendment, "proceeds" is defined as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, *including the gross receipts of such activity*." *Id.* (emphasis added). The addition of this definition to the statute was a direct response to the Supreme Court's holding in *United States v. Santos*, 128 S. Ct. 2020, 2031 (2008), that the term "proceeds" in § 1956 was limited to profits. *See, e.g.*, 155 Cong. Rec. S2072 (daily ed. Feb. 10, 2009) (statement of Sen. Bayh) ("[T]his bill would

---

1     The United States has also offered evidence of extortion or attempted extortion of candidates for office. The money-laundering statute does not require that a defendant be personally involved in the underlying specified unlawful activity, but only that he engage in a transaction involving the proceeds of such activity with the requisite intent and knowledge. *See* 18 U.S.C. § 1956(a)(1).

overturn the Supreme Court's narrow and confusing decision in *United States v. Santos* and clarify that, as used in the Money Laundering Control Act, the term 'proceeds' refers to the total receipts — not simply the profits — of an illegal activity."). Moreover, the forfeiture provision associated with § 1956, 18 U.S.C. § 982, broadly defines the property subject to forfeiture as "any property, real or personal, *involved in* such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1) (emphasis added). This expansive definition suggests that deduction of costs and expenses from the forfeiture amount would not be appropriate.

Because Defendant Morris has raised the issue of *ex post facto* application of the new definition of "proceeds," the Court assumes, for purposes of the present analysis, that this definition does not apply. However, as will be explained below, its existence, as well as the legislative history surrounding its addition to the money-laundering statute, are still relevant to some extent.

Even before amendment of § 1956 to more clearly define "proceeds," and before the Supreme Court's *Santos* decision, the Sixth Circuit had interpreted the term to mean gross receipts. *See United States v. Kratt*, 579 F.3d 558, 560 (6th Cir. 2009) (citing *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000); *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996)). In *Kratt*, the court analyzed *Santos* and derived a two-prong test from the Supreme Court's plurality holding in that case. The *Kratt* court found that

> "[p]roceeds" does not always mean profits, as Justice Scalia concluded [in *Santos*]; it means profits only when the § 1956 predicate offense creates a merger problem that leads to a radical increase in the statutory maximum

> sentence and only when nothing in the legislative history suggests that Congress intended such an increase.

579 F.3d at 562. To determine whether profits are the appropriate measure of proceeds under § 1956, then, the Court must ask (1) whether the predicate offense (*i.e.*, the "specified unlawful activity") under § 1956 merges with the money-laundering offense such that a defendant could be punished separately, and more severely, for money laundering arising out of that underlying offense, and (2) if so, whether the legislative history suggests that Congress intended this effect. *See id.*

Justice Stevens, concurring in *Santos*, described "the 'merger' problem" under the facts of that case as follows:

> Allowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business.

128 S. Ct. 2033 (Stevens, J., concurring). Justice Scalia's plurality opinion explained the merger problem this way:

> Anyone who pays for the costs of a crime with its proceeds — for example, the felon who uses the stolen money to pay for the rented getaway car — would violate the money-laundering statute. . . . Generally speaking, any specified unlawful activity, an episode of which includes transactions which are not elements of the offense and in which a participant passes receipts along to someone else, would merge with money laundering.

*Id.* at 2026-27.

The above examples clearly indicate that the "merger problem" contemplated in *Santos* is not an issue in this case, where the underlying RICO predicate offenses (bribery

-6-

and extortion) were remote in time from the alleged money-laundering transaction (and, with respect to extortion, not alleged to have been committed by the Morrises or Bowling) and the expenses the defendants seek to exclude are operating costs (payroll, materials, etc.) of otherwise legitimate businesses, not costs incurred in the underlying illegal activity. [*See* Record No. 727, p. 2; Record No. 731, p. 2] To put it differently, the alleged violations of the money-laundering statute (payments under the contracts) were acts completely separate from the specified unlawful activities (bribery and extortion) allegedly underlying the RICO violations, and there is thus no risk of merger.[2]

Since, under the *Kratt* analysis, the Supreme Court's *Santos* decision does not apply in this case,[3] the Court must look to prior Sixth Circuit precedent regarding the appropriate measure of "proceeds" under § 1956. *See Kratt*, 579 F.3d at 563. As the *Kratt* court recognized, the Sixth Circuit had found prior to *Santos* that "proceeds" under the money-laundering statute includes gross receipts. *See id.* (citing *Prince*, 214 F.3d at 748; *Haun*, 90

---

2  As the United States explained during oral argument, the maximum statutory term of incarceration for a RICO violation is twenty years. Further, the maximum punishment for the underlying specified unlawful activity of extortion is twenty years — the same as the maximum punishment for the money-laundering offense charged under § 1956(h). *See* 18 U.S.C. §§ 1951(a), 1956(a); *Kratt*, 579 F.3d at 563. Moreover, as the Superseding Indictment does not charge any of the defendants with bribery, any double-jeopardy-type merger concerns with regard to that underlying offense are negated. *See Santos*, 128 S. Ct. 2033 (Stevens, J., concurring).

3  Because the first prong of the *Kratt* test is not met, the Court need not reach the issue of whether legislative history supports the use of gross receipts (rather than net profits) when calculating "proceeds" under the money-laundering statute under the facts presented. *See Kratt*, 579 F.3d at 563. However, the Court notes that the May 2009 amendment to § 1956, in direct response to *Santos*, defining "proceeds" to "includ[e] the gross receipts of [specified unlawful] activity," 18 U.S.C. § 1956(c)(9), leaves no question that Congress intended such an outcome.

F.3d at 1101). In *Prince*, the court used the Webster's Dictionary definition originally applied in *Haun*: "'Proceeds' include 'what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenue." 214 F.3d at 747 (citing *Haun*, 90 F.3d at 1101). Under this definition, the total amounts received by the defendants through the contracts with the city and county, without deduction of operating expenses, constitute "proceeds" under the money-laundering statute.

### III. Conclusion

Under the facts presented, the term "proceeds" under the money-laundering statute is not limited to net profits. Instead, the gross amounts received by the defendants' companies under the city and county contracts represent the money "involved in" the alleged violation of § 1956 and thus subject to forfeiture under § 982. *See* 18 U.S.C. § 982(a)(1). Moreover, opinion testimony on this issue is not relevant at this point in the case, as the precise amount realized from the contracts has no bearing on whether the defendants did or did not engage in a transaction prohibited by § 1956. Presentation of such testimony would be irrelevant and unduly confusing under Rules 401 and 403 of the Federal Rules of Evidence.

This 19th day of March, 2010.



Signed By:
*Danny C. Reeves* DCR
United States District Judge